**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

DAX HAWKINS,

      Petitioner,                         Case No. 2:08-CV-12281

v.                                 HONORABLE GERALD E. ROSEN
                                 CHIEF UNITED STATES DISTRICT JUDGE

THOMAS BIRKETT, WARDEN,

      Respondent,

_____/

## OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS AND GRANTING CERTIFICATE OF APPEALABILITY

### I. Introduction

Petitioner, Dax Hawkins, was convicted in Wayne Circuit Court of first-degree murder, MICH. COMP. LAWS, 750.316, assault with intent to commit murder, MICH. COMP. LAWS 750.83, felon in possession of a firearm, MICH. COMP. LAWS 750.224f, and possession of a firearm during the commission of a felony, MICH. COMP. LAWS 750.227b. Petitioner's pro se petition for writ of habeas corpus, filed under 28 U.S.C. §2254, asserts that he is being held in custody at a Michigan correctional facility in violation of his constitutional rights.   For the reasons that follow, the Court will deny the petition.

### II. Background

The charges against Petitioner arose from a drug-transaction that resulted in two men being shot.  One of the men died, but the other one survived and identified Petitioner - a person he had known since childhood - as one of the perpetrators.

1

The evidence presented at Petitioner's jury trial largely consisted of the testimony of police officers, medical personnel, and other investigators who testified regarding observations made at the scene of the shooting and the condition of the victims.

The key to the trial was the testimony of the surviving victim, Jason Taylor. Taylor testified that he bought and sold marijuana. Taylor had known Petitioner since childhood, and he had been engaged in transactions involving one-to-twenty pounds of marijuana with him.

Taylor testified that on October 19, 2003, sometime between 8:00 - 9:00 p.m., he sold a pound of marijuana to Petitioner. During the transaction, Petitioner told Taylor that he had a customer who wanted to purchase 20 to 25 pounds of marijuana. Taylor responded that he could fill the order, and he told Petitioner to call him when the buyer was available.

After receiving a call from Petitioner, Taylor put two garbage bags of marijuana in the trunk of his van and brought Earl Riley with him. Taylor and Riley met Petitioner and the customer, but the deal fell through when the customer said he did not have the funds.

Soon thereafter, Petitioner called Taylor again and told him that the customer had been suspicious, but that he had the money and was ready to complete the transaction. Taylor suggested a new meeting place. Taylor and Riley drove to the location, and they met Petitioner and the customer who arrived in a sedan. Riley placed the two garbage bags of marijuana in the trunk of the sedan and then returned to Taylor's car. Taylor called Petitioner on his cell phone, and Petitioner told him that he was counting the money.

Petitioner then approached and climbed into the back seat of Taylor's car. Petitioner said there might be a problem with the "ounces." When Taylor turned in his seat to

2

respond, Petitioner produced a gun and started shooting.  Blood splattered on the window, and Riley slumped forward again the dashboard.  Taylor felt himself get shot in the neck. He then saw Petitioner's customer run up from the sedan and start shooting into his car as well.  Taylor was shot multiple times, but he survived.  Riley was shot in the head and died of his wounds.  The police received a "shots fired" call at 11:25 p.m.

The case against Petitioner relied on Taylor's identification of Petitioner; there were no eyewitnesses to the shooting or other evidence presented to link Petitioner to the crime presented at trial.  The defense did not present any witnesses.

Following arguments, instructions, and deliberations, the jury returned a verdict of guilty on all counts.  The trial court subsequently sentenced Petitioner to mandatory life in prison for the murder conviction, 50-to-100 years for the assault conviction, and lesser terms for the firearm convictions.

Petitioner filed an appeal of right in the Michigan Court of Appeals.  His appointed appellate counsel filed a brief that raised four claims:

I.  Defendant was denied due process when gory pictures were introduced into evidence.

II.  Defendant was denied due process when evidence of prior, uncharged, crimes were admitted into evidence.

III. Defendant was deprived of due process when the court denied his motion for a new trial.

IV.  Defendant was denied of due process when the prosecutor discussed penalty.

Petitioner also filed a pro se supplemental brief that raised three additional claims:

I.  Defendant was deprived of the effective assistance of counsel where trial counsel created a conflict of interest during the trial proceedings which infringed upon defendant's right to testify on his own behalf, as well as his

3

right to confrontation. Counsel was equally ineffective for failure to present defendant's alibi defense, investigate supportive leads, and for failure to object to the trial court's defective instructions on reasonable doubt.

II. The trial court deprived defendant of his Sixth and Fourteenth Amendment rights to a fair trial where the court gave a defective reasonable doubt instruction which permitted the jury to find guilt based on a degree of proof below that required by the due process clause.

III. Defendant was denied his state and federal constitutional right to due process where the prosecutor knowingly presented false testimony. At a minimum, defendant is entitled to a remand for an evidentiary hearing.

Petitioner also filed a motion to remand in the Michigan Court of Appeals seeking an evidentiary hearing on his claim of ineffective assistance of counsel. Though the motion references an attached offer of proof and affidavit from Petitioner, no such supporting documents appear to have been included with the filing. The Michigan Court of Appeals denied the motion for remand under MICH. CT. R. 7.211(C)(1).

The Michigan Court of Appeals thereafter affirmed Petitioner's convictions in an unpublished opinion. *People v. Hawkins,* 2006 Mich. App. LEXIS 3077 (Mich. Ct. App. Oct. 19, 2006).

Petitioner filed an application for leave to appeal in the Michigan Supreme Court and raised the same seven claims that had been presented to the Michigan Court of Appeals. The Michigan Supreme Court denied leave to appeal. *People v. Hawkins,* 728 N.W.2d 418 (Mich. 2006).

Petitioner then filed the instant petition for writ of habeas corpus in which he raises the same claims that he presented to the state courts during his direct appeal.

4

### III. <u>Standard of Review</u>

Review of this case is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").  Pursuant to the AEDPA, Petitioner is entitled to a writ of habeas corpus only if he can show that the state court's adjudication of his claims on the merits-

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  Simply stated, under section 2254(d), Petitioner must show that the state court's decision "was either contrary to, or an unreasonable application of, [the Supreme] Court's clearly established precedents, or was based upon an unreasonable determination of the facts."  *Price v. Vincent*, 538 U.S. 634, 639 (2003).

A state court's decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts."  *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000).  A state court's decision is an "unreasonable application of" clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case."  *Id.* at 413.  A state court decision "based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding, § 2254(d)(2)."  *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

5

## IV. <u>Discussion</u>

### A. <u>Inflammatory Photographs</u>

Petitioner first claims that the admission of gory photographs rendered his trial fundamentally unfair in violation of due process. Specifically, Petitioner challenges the admission of several photographs depicting the physical condition of the surviving victim, Taylor, while he was hospitalized. The trial court admitted the photographs over defense counsel's objection. Respondent asserts that the claim is not cognizable.

It is "not the province of a federal habeas court to reexamine state-court determinations on state-court questions." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). A federal court is limited in federal habeas review to deciding whether a state-court conviction violates the Constitution, laws, or treaties of the United States. *Id.* Thus, errors in the application of state law, especially rulings regarding the admissibility of evidence, are usually not questioned by a federal habeas court. *Seymour v. Walker*, 224 F.3d 542, 552 (6th Cir. 2000); *see also Stephenson v. Renico*, 280 F.Supp.2d 661, 666 (E.D. Mich. 2003).

The Michigan Court of Appeals addressed this issue and rejected it on the merits:

> Defendant argues that the trial court violated his due process rights in admitting photographs of Jason Taylor in the hospital. We disagree. We review a trial court's decision to admit evidence for an abuse of discretion. *People v Katt*, 468 Mich. 272, 278; 662 N.W.2d 12 (2003). Photographs are admissible if they are relevant under MICH. R. EVID. 401 and their probative value is not substantially outweighed by the danger of unfair prejudice under MICH. R. EVID. 403. *People v. Mills*, 450 Mich. 61, 66, 75; 537 N.W.2d 909, *mod* 450 Mich. 1212 (1995). Defendant was charged with assault with intent to murder Taylor, so his intent to kill was directly at issue in the case. Evidence of the type, placement, and number of injuries bears on a defendant's intent to kill. *See id.* at 71-72. However, MICH. R. EVID. 403 provides that relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice. Under the circumstances, defendant fails to demonstrate that the danger of unfair prejudice substantially outweighed the probative value of the photographs.

> The photographs are not particularly grisly or provocative, and like the photographs in *Mills*, they accurately represented Taylor's injuries. *Mills, supra* at 77. Therefore, the trial court did not abuse its discretion in admitting the photographs of Taylor at the hospital.

*Hawkings*, *supra*, at 2-3.

The Court of Appeals determined that allowing the pictures of the victim to be admitted into evidence was not an abuse of discretion. A habeas review is very deferential to the findings of the lower state courts. *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002). Without, at a minimum, an abuse of discretion, there cannot be a violation of fundamental fairness. Petitioner must show that "the state trial court's evidentiary ruling was 'so egregious' that it effectively denied [him] a fair trial. *Fleming v. Metrish*, 556 F.3d 520, 535 (6th Cir. 2009) (*citing Baze v. Parker*, 371 F.3d 310, 324 (6th Cir. 2004)).

The admission of the photograph was not fundamentally unfair. The photographs were relevant to the issue of Petitioner's intent, and the Michigan Court of Appeals noted that they were not particularly provocative. The Sixth Circuit has found no due process violation in far more extreme cases involving photographs of murder victims. *See, e.g. Biros v. Bagley*, 422 F.3d 379, 391 (6th Cir. 2005) (holding that admission of photographs depicting murder victim's severed head, her severed head held near her torso and severed breast, and her torso with her severed head and severed breast replaced on torso, did not deprive defendant of fair trial, and thus did not warrant federal habeas relief).

The Court concludes that the state court adjudications of this issue was not contrary to, or an unreasonable application of clearly established Supreme Court precedent. Petitioner is not entitled to habeas relief regarding this claim.

7

## B. <u>Evidence of Prior Bad Acts</u>

Petitioner next claims that the admission of evidence that Petitioner engaged in prior marijuana transactions with Taylor amounted to the admission of prior-bad-acts evidence contrary to MICH. R. EVID. 404(b). Defense counsel made no objection to the admission of this evidence at trial.  Accordingly, when the unpreserved claim was presented to the Michigan Court of Appeals, it limited its review to the "plain error" standard.  Respondent asserts that this adjudication resulted in a procedural bar to habeas review.

Federal habeas relief may be precluded on claims that a petitioner has not presented to the state courts in accordance with the state's procedural rules. *Wainwright v. Sykes*, 433 U.S. 72, 85-87 (1977).  Such a procedural default occurs when a petitioner fails to comply with a state procedural rule, the rule is relied upon by the state courts, and the procedural rule is "adequate and independent." *White v. Mitchell*, 431 F.3d 517, 524 (6th Cir. 2005).  Procedural default may be excused where the petitioner demonstrates cause and prejudice for his failure to comply with the state procedural rule, or when a petitioner establishes that failing to review the claim would result in a fundamental miscarriage of justice. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *Combs v. Coyle*, 205 F.3d 269, 274 (6th Cir. 2000).

Petitioner's prior-bad-acts claim was procedurally defaulted by virtue of his failure to object to the introduction of the evidence of prior drug transactions in the trial court which resulted in appellate review under the more restrictive "plain error" standard.  It is well-established that the Michigan Court of Appeals' application of plain-error review constitutes the invocation of an independent and adequate procedural rule that bars federal review of the merits of his claim absent a showing of "cause and prejudice." *Fleming v.*

8

*Metrish*, 556 F.3d 520, 524 (6th Cir. 2009).

Even if Petitioner were to establish cause to excuse his default, his showing of prejudice would fall short because his defaulted claim does not present a cognizable issue. *See Bey v. Bagley*, 500 F.3d 514, 519 (6th Cir. 2007). The admission of other acts evidence against Petitioner at his state trial does not entitle him to habeas relief because there is no clearly established Supreme Court law which holds that a state violates a habeas petitioner's due process rights by admitting such evidence. *Bugh v. Mitchell*, 329 F. 3d 496, 512 (6th Cir. 2003); *Adams v. Smith*, 280 F. Supp. 2d 704, 716 (E.D. Mich. 2003). Morever, appraisals of the probative and prejudicial value of evidence are entrusted to the sound discretion of a state trial court judge, and a federal court considering a habeas petition must not disturb that appraisal absent an error of constitutional dimensions. *See Dell v. Straub*, 194 F. Supp. 2d 629, 645 (E.D. Mich. 2002).

The chief concern in admitting prior acts evidence is that the jury will conclude that the defendant has a propensity to commit the type of crime for which he is standing trial. But in the present case, evidence that Petitioner and Taylor had engaged in prior marijuana transactions did not suggest a propensity to rob and murder drug dealers. Indeed, defense counsel used the evidence of prior successful and mutually profitably marijuana transactions between Petitioner and Taylor to demonstrate that Petitioner did not have a motive to kill Taylor and lose the benefit of their partnership. Accordingly, Petitioner fails to show that the trial court's admission of this evidence deprived him of his fundamental right to a fair trial or resulted in any other violation of his constitutional rights. Petitioner is not entitled to habeas corpus relief with respect to this claim.

9

### C.  Denial of Motion for Mistrial

Petitioner next claims that the trial court erroneously denied his motion for a mistrial when a police officer testified that Petitioner had fled Michigan following the crime. Specifically, Michigan State Trooper Steven Kramer testified that he was part of the Alliance Fugitive Taskforce.  He testified that he was in the process of filing a federal flight warrant when he located Petitioner at a federal correctional facility in Kentucky.  Defense counsel moved for a mistrial, arguing that the trooper's testimony unfairly implied that Petitioner had fled Michigan.  The trial court denied the motion.  Petitioner raised the issue again during his appeal of right, but the Michigan Court of Appeals denied the claim on the merits:

> Defendant next argues that the trial court violated his due process rights in denying his motion for mistrial on the basis of Michigan State Trooper Kramer's testimony, which implied that defendant fled the jurisdiction. We disagree. Appellate courts review for abuse of discretion a trial court's denial of a motion for mistrial. *People v. Cress*, 468 Mich. 678, 691; 664 N.W.2d 174 (2003). Although Kramer testified that he was in the process of filing a federal flight warrant for defendant, he explained that it was not necessary because defendant had been detained. Therefore, any prejudice from the testimony was necessarily minor, and the trial court was in the best position to determine the effect on the jury. *People v. Grove*, 455 Mich. 439, 476; 566 N.W.2d 547 (1997). We also note that the trial court denied the prosecutor's request for a jury instruction on flight. We defer to the trial court's determination that the evidence did not warrant a new trial. *Id.*

*Hawkins*, *supra*, at 4-5.

Petitioner essentially argues that the trooper's testimony was not admissible as evidence of flight under Michigan law because he had been ordered to present himself to federal authorities in Kentucky.  To the extent Petitioner's argument is based upon an alleged misapplication of state law, he has failed to state a claim upon which habeas relief may be granted. *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990).  A question concerning a

10

perceived error of state law serves as a basis for habeas corpus relief only when the petitioner is denied fundamental fairness in the trial process. *Estelle, supra.* The rulings by a state's highest court with respect to state law are binding on the federal courts. *Wainwright v. Goode*, 464 U.S. 78, 84 (1983). Furthermore, the Supreme Court has "reemphasize[d] that it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." *Estelle*, 502 U.S. at 68. The federal courts are bound by decisions of an intermediate state appellate court unless convinced that the highest state court would decide the issue differently. *Olsen v. McFaul*, 843 F.2d 918, 929 (6th Cir. 1988).

To the extent that Petitioner asserts that his federal constitutional rights were violated, his claims are without merit. Under established federal law, a trial court has the discretion to grant or deny a motion for mistrial in the absence of a showing of manifest necessity. *Walls v. Konteh*, 490 F.3d 432, 436 (6th Cir. 2007); *Clemmons v. Sowders*, 34 F.3d 352, 354-55 (6th Cir. 1994). In *Gori v. United States*, 367 U.S. 364, 368-69 (1961), the Supreme Court, quoting Justice Story, emphasized that the scope of a trial judge's discretion with regard to declaring a mistrial is broad:

> [T]he law has invested Courts of justice with the authority to discharge a jury from giving any verdict, whenever, in their opinion, taking all the circumstances into consideration, there is a manifest necessity for the act, or the ends of public justice would otherwise be defeated. They are to exercise a sound discretion on the subject; and it is impossible to define all the circumstances, which would render it proper to interfere. To be sure, the power ought to be used with the greatest caution, under urgent circumstances, and for very plain and obvious causes.

*Gori*, 367 U.S. at 368-69 (*quoting United States v. Perez*, 22 U.S. 579 (1824)).

The Michigan Court of Appeals deferred to the trial court's determination that the

11

evidence did not necessitate a mistrial. While it was the prosecutor's theory that Petitioner turned himself in to federal authorities on another warrant for the purpose of avoiding arrest on the murder charge, the trial court ultimately did not instruct the jury on evidence of flight as probative of consciousness of guilt. The jury was informed that Petitioner had been located in a federal facility for an unspecified reason. Because the jury already knew, at a minimum, that Petitioner was engaged in narcotics trafficking, this information was not particularly harmful to his defense. It did not create that type of urgent circumstance that necessitated the granting of a mistrial. The Michigan Court of Appeals decision to reject this claim on the merits was therefore not objectively unreasonable.

### D. **Prosecutor's Comment Regarding Penalty**

Petitioner next claims that the prosecutor committed misconduct when she referred to the fact that Michigan does not have the death penalty during her closing argument. Specifically, during her closing argument the prosecutor commented on the circumstances of Riley's death:

> Earl Riley made a wrong choice. He knew that he was there as a back up for a late night drug deal. But I want you to tell me what did Earl Riley do to get executed? How was Earl Riley a threat to defendant?
>
> Dax Hawkins didn't bring him into this world. Dax Hawkins has no right to take him out of this world. What was Earl Riley's crime?
>
> We don't have a death penalty here in Michigan, ladies and gentlemen. I don't care if you have a room full of marijuana that fills up this courthouse, you still don't get a death penalty for that. Trial Tr. 4-6-05, at 111.

The Michigan Court of Appeals addressed this claim on the merits and found that the comment did not inject the issue of penalty into the trial:

12

Defendant argues that the prosecutor committed misconduct during her closing argument by explaining, incidentally, that Michigan does not permit the death penalty. We disagree. "Generally, a claim of prosecutorial misconduct is a constitutional issue reviewed de novo." *People v. Abraham*, 256 Mich. App. 265, 272; 662 N.W.2d 836 (2003). "The test of prosecutorial misconduct is whether the defendant was denied a fair and impartial trial . . . ." *Id.* Generally, jurors may not consider the sentencing ramifications of their verdict. *People v. Goad*, 421 Mich. 20, 27, 36; 364 N.W.2d 584 (1984). Therefore, a prosecutor's intentional reference to the death penalty's applicability is an improper statement that amounts to misconduct.

However, defendant fails to demonstrate that the prosecutor intended to inject the issue of defendant's penalty into the trial. Taken in context, the prosecutor directed the improper reference to Riley's "execution," and presented the rhetorical question of what misdeed Riley could have committed to warrant defendant's infliction of such a severe penalty. The argument accurately stated the law, and the prosecutor limited the argument somewhat to the victim's possession of marijuana. Because the prosecutor did not directly link the lack of death penalty to defendant's murder charges, the effect of the prosecutor's improper reference is questionable. Moreover, although the trial court overruled defendant's objection, it immediately responded that the prosecutor was not discussing defendant's potential penalty, but arguing his guilt.  The trial court explained that the prosecutor's comments were pure argument and offered that "I don't think that has anything to do with this case." The prosecutor immediately redirected the jury to the case's facts and away from the penalty issue. The trial court later instructed the jury not to consider the potential sentence or penalty. Under the circumstances, the trial court ameliorated much of the prejudice caused by the prosecutor's argument, and, assuming arguendo that the error rose to a constitutional level, it was not structural and was harmless beyond a reasonable doubt. *People v. Bauder*, 269 Mich. App. 174, 179-180; 712 N.W.2d 506 (2005).

*Hawkins*, *supra*, at 5-7.

The United States Supreme Court has stated that prosecutors must "refrain from improper methods calculated to produce a wrongful conviction." *Berger v. United States*, 295 U.S. 78, 88 (1935).  When a petitioner seeking habeas relief makes a claim of prosecutorial misconduct, the reviewing court must consider that the touchstone of due process is the fairness of the trial, not the culpability of the prosecutor.  On habeas review,

a court's role is to determine whether the conduct was so egregious as to render the entire trial fundamentally unfair. *Serra v. Michigan Department of Corrections*, 4 F. 3d 1348, 1355-1356 (6th Cir. 1993). When analyzing a claim of prosecutorial misconduct, a court must initially decide whether the challenged statements were improper. *Boyle v. Million*, 201 F. 3d 711, 717 (6th Cir. 2000). If the conduct is improper, the district court must then examine whether the statements or remarks are so flagrant as to constitute a denial of due process and warrant granting a writ. *Id.* In evaluating prosecutorial misconduct in a habeas case, consideration should be given to the degree to which the challenged remarks had a tendency to mislead the jury and to prejudice the accused, whether they were isolated or extensive, whether they were deliberately or accidentally placed before the jury, and, except in the sentencing phase of a capital murder case, the strength of the competent proof against the accused. *Serra,* 4 F. 3d at 1355-56; *See also Simpson v. Warren,* 662 F. Supp. 2d 835, 853 (E.D. Mich. 2009).

When a jury has no sentencing function, it should "reach its verdict without regard to what sentence might be imposed." *See Shannon v. United States*, 512 U.S. 573, 579 (1994) (*citing Rogers v. United States*, 422 U.S. 35, 40 (1975)). Consequently, it is arguably improper for a prosecutor to comment on a defendant's possible punishment during the guilt phase of a trial. *See United States v. Bennett*, 47 Fed. Appx. 844, 846 (9th Cir. 2002).

The Michigan Court of Appeals' decision that the comment did not render Petitioner's trial fundamentally unfair is neither contrary to Supreme Court precedent nor an unreasonable application of federal law. The prosecutor's comment did not allude to any punishment Petitioner would receive if found guilty, but rather it characterized the crime

14

itself as an unjust imposition of the death penalty on Riley for his dealing in drugs.  The prosecutor did not make an improper reference to possible penal consequences for Petitioner, and in fact, the trial court instructed the jury that they should not consider possible penalties in reaching a verdict.  Even if the comment could be construed as a reference to the penalty Petitioner would face, it was isolated in nature, did not tend to mislead the jury, and did not prejudice Petitioner given the curative instructions.  The prosecutor's comment did not render Petitioner's trial fundamentally unfair. Habeas relief is not warranted on this claim.

### E.  Ineffective Assistance of Trial Counsel

Petitioner next asserts that he was denied the effective assistance of trial counsel. Petitioner alleges that he had a viable alibi defense that his trial counsel refused to present at trial despite Petitioner's insistence that he do so.

Petitioner appended his own affidavit along with the affidavits of Eric Gibson and Adan Knowles to his petition.  The affidavits purport to account for Petitioner's whereabouts on the night of the crime.  Petitioner claims that he was at the Locker Room bar from about 7:45 to 8:30 p.m. with Nikia Brockington, Charmaine Wright, and a woman with the first name of Maria.  From there, Petitioner claims that he went to Baker's Lounge, and then finally to the Club.com bar, where he stayed until 1:30 a.m.  At the last establishment, Petitioner asserts he was with Nyree Phillips, Eric Gibson, and Adam Knowles, and he remembers being served by a waitress named Anasia.

Petitioner asserts that he vehemently disagreed with his trial counsel's strategy of

15

conceding that Petitioner was in the victims' car, but claiming that Taylor falsely accused Petitioner of participating in the crime. Petitioner acknowledged that Charmaine, Nikia, and Maria had some connection with Taylor that led to them to not cooperate with the defense investigator. He claims that he learned from Nyree Phillips that the defense investigator did not meet with his other alibi witnesses because he could not arrange a time to meet with them all as a group. Petitioner lastly asserts that defense counsel failed to obtained security videotapes from the bars and failed to use cell phone records that would have corroborated his alibi defense.

The Michigan Court of Appeals rejected the claim on the merits by essentially finding that the claim was based on evidence outside of the record, and because Petitioner had failed to secure an evidentiary hearing on the claim prior to the court's review:

> Defendant next claims that he was deprived of effective assistance of counsel by a conflict of interest created when trial counsel employed a strategy that involved placing defendant at the scene of the shooting. We disagree. Because a *Ginther* [*People v. Ginther*, 390 Mich. 436; 212 N.W.2d 922 (1973)] hearing was never conducted, our review is limited to mistakes apparent on the record. *People v. Riley* (After Remand), 468 Mich. 135, 139; 659 N.W.2d 611 (2003). When claiming ineffective assistance due to defense counsel's conflict of interest, a defendant must show that an actual conflict of interest adversely affected his lawyer's performance. *People v. Smith*, 456 Mich. 543, 556-557; 581 N.W.2d 654 (1998). Although defendant asserts that there was a conflict between his counsel's strategy and his own version of events, there is no evidence in the lower court record to support this assertion. Therefore, defendant has failed to show that trial counsel was ineffective because of an actual conflict of interest.

> Similarly, defendant contends that trial counsel was ineffective in failing to pursue an alibi defense or call an endorsed witness, a Nextel representative, to testify. Defense counsel stated that he had investigated the alibi witnesses and found that none of them were cooperative. Counsel confirmed that defendant agreed with the decision not to call alibi witnesses Nikia Brockington, Adan Knowles, Eric Gibson, and Nyree Phillips, to testify at trial. Defendant stated his assent on the record, thereby waiving any error. *See People v. Carter*, 462 Mich. 206, 215-216; 612 N.W.2d 144 (2000).

16

Likewise, defendant fails to demonstrate any prejudice from his trial counsel's strategic decision to waive presentation of the Nextel representative. Where counsel's conduct involves a choice of strategies, it is not deficient. *See People v LaVearn*, 448 Mich. 207, 216; 528 N.W.2d 721 (1995). The fact that a particular strategy is not successful does not demonstrate that counsel was ineffective. *People v. Matuszak*, 263 Mich. App. 42, 61; 687 N.W.2d 342 (2004).

Defendant also contends that his alibi could have been supported by Charmain Wright, a woman named Maria, the proprietor of a nightclub, and the surveillance camera from a nightclub that defendant claims to have visited at the time of the shootings. However, these witnesses were never provided on a notice of alibi or discussed on the record, and there is no mention of the surveillance camera on the record. Our review is limited to mistakes apparent on the record, which provides no support for defendant's assertions. *See Riley, supra* at 139. Therefore, defendant's claim of ineffective assistance of counsel fails.

Defendant also claims that counsel deprived him of his right to testify. However, defendant fails to present any evidence that his trial counsel coerced his decision not to testify, and the right is waived, "if defendant, as in this case, decides not to testify or acquiesces in his attorney's decision that he not testify. . . ." *People v. Simmons*, 140 Mich. App. 681, 684-685; 364 N.W.2d 783 (1985).

*Hawkins*, *supra*, at 7-10.

17

## 1. The Effect of Petitioner's Affidavits

When Petitioner presented his ineffective assistance of counsel claim to the Michigan Court of Appeals and Michigan Supreme Court, he did not support it with the three affidavits that he has appended to the present petition. The failure to so support his claim in the state court restricts the scope of review of his claim in this Court.

Petitioner's own affidavit is labeled "Affidavit and Offer of Proof" and it bears the caption and case number for his state court appeal of right. Both Petitioner's supplemental pro se brief and his motion to remand filed in the Michigan Court of Appeals make reference to an "Affidavit and Offer of Proof" to support the ineffective assistance of counsel claim. The affidavit and motion to remand both appear to be dated March 9, 2006. Respondent's Notice of Filing Rule 5 Material (dkt. 6) states that it includes "Michigan Court of Appeals 262677." Yet the affidavit does not appear in the state court record filed by Respondent. Petitioner's application for leave to appeal filed in the Michigan Supreme Court makes reference to his affidavit as well, but the affidavit is also absent from that portion of the state court records.

The Michigan Court of Appeals denied Petitioner's motion to remand for an evidentiary hearing on his ineffective assistance of counsel claim with citation to Michigan Court Rule 7.211(C)(1). Among other things, that rule provides that a motion to remand "must be supported by affidavit or offer of proof regarding the facts to be established at a hearing." Accordingly, it appears to the Court that Petitioner's "Affidavit and Offer of Proof" - perhaps through inadvertence or neglect - was never filed in the state courts; it does not appear in the state court record, and none of the state court decisions refer to it.

The situation is clearer with respect to the affidavits of Eric Gibson and Adan

18

Knowles.  Gibson's affidavit is dated April 27, 2007, and Knowles's affidavit is dated April 26, 2007.  These affidavits were executed after the Michigan Supreme Court denied leave to appeal in Petitioner's case on March 26, 2007.  Accordingly, they could not have been presented to the state courts.

AEDPA restricts the ability of a district court to consider evidence presented in support of a habeas claim that was not first presented to the state courts.  28 U.S.C. § 2254(e)(2) states that if an applicant for a writ of habeas corpus has failed to develop the factual basis of a claim in state court proceedings, the court shall not hold an evidentiary hearing on the claim.

Under the opening clause of § 2254(e)(2), a failure to develop the factual basis of a claim by a habeas petitioner is not established unless there is a lack of diligence, or some greater fault, attributable to the prisoner or prisoner's counsel. *Williams v. Taylor*, 529 U.S. 420, 432 (2000).  Diligence will require that the petitioner, at a minimum, seek an evidentiary hearing in state court in the manner prescribed by state law. *Id.* at 435.  If a defendant's request for an evidentiary hearing in the state courts is denied because of his failure to abide by the state law requirement that he support his request with affidavits or other evidentiary proffers, he was not met the "diligence" requirement of § 2254(e)(2). *See Cooey v. Coyle*, 289 F. 3d 882, 893 (6th Cir. 2002)("By failing to submit evidence [to the state court], Cooey barred himself from developing the claim further, and is not now entitled to an evidentiary hearing.")

As noted by the Michigan Court of Appeals in this case, Michigan has a requirement that a request for an evidentiary hearing be supported by an adequate offer of proof. MICH. CT. R. 7.211(C)(1).  Under this rule, a motion to remand must be supported by affidavit or

offer of proof regarding the facts to be established at a hearing.  Petitioner's failure to make a sufficient offer of proof as required by this rule renders his attempt to develop the factual basis of his claim less than diligent under § 2254(e)(2).  See *Moore v. Berghuis*, No. 00-CV-73414, 2001 U.S. Dist. LEXIS 3025, 2001 WL 277047, at *7 (E.D. Mich. Feb. 28, 2001) (Steeh, J.).  Petitioner's own failure to ensure that his affidavit was filed along with his motion to remand is attributable to him and not the state.  Therefore, Petitioner is barred from enlarging the record with the three affidavits attached to his petition or from obtaining a hearing to offer other evidence in support of his claim.

### 2. The Merits of Petitioner's Claim

To show that Petitioner was denied the effective assistance of counsel under federal constitutional standards, he must satisfy the two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984).  First, the petitioner must prove that counsel's performance was deficient.  This requires a showing that counsel made errors so serious that he or she was not functioning as counsel as guaranteed by the Sixth Amendment.  *Id.* at 687.  Second, the petitioner must establish that the deficient performance prejudiced the defense.  Counsel's errors must have been so serious that they deprived the petitioner of a fair trial or appeal.  *Id.*

With respect to the performance prong, a petitioner must identify acts that were "outside the wide range of professionally competent assistance" in order to prove deficient performance.  *Id.* at 690.  The reviewing court's scrutiny of counsel's performance is highly deferential.  *Id.* at 689.   The court must recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of

20

reasonable professional judgment. *Id.* at 690.

To satisfy the prejudice prong under *Strickland*, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different" *Id.* at 694. A reasonable probability is one that is sufficient to undermine confidence in the outcome. *Id.* "On balance, the benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the [proceeding] cannot be relied on as having produced a just result." *McQueen v. Scroggy*, 99 F.3d 1302, 1311-12 (6th Cir. 1996). Under *Strickland*, a court must presume that decisions by counsel as to whether to call or question witnesses are matters of trial strategy. *See Hutchison v. Bell*, 303 F.3d 720, 749 (6th Cir. 2002).

Because Petitioner's claim is dependant on facts not contained in the record, there is no basis for concluding that the state court adjudication of the claim involved an unreasonable application of this standard. Moreover, the existing record contradicts Petitioner's claim that his trial counsel deficiently neglected to raise an alibi defense. On the first morning of trial, the prosecutor objected to the Alibi Notice on the grounds that it did not list contact information for the four listed witnesses - Brockington, Knowles, Gibson, and Phillips - nor describe the location of Club.com. Defense counsel responded by stating that it was no longer planing to call these witnesses. He stated "I investigated it and saw that none of them were cooperative." Tr. 4-4-05, at 3-4. Then at the close of the prosecutor's case, defense counsel again indicated to the court that he had submitted a witness list, but stated "I already put on the record at the beginning of the case that I wasn't planning on calling them. And I want to confirm with Mr. Hawkins his agreement that I'm

21

not to call them." Petitioner indicated his agreement. T 4-6-05, at 76-77. With respect to the cell phone records, a representative from Nextel was listed on the prosecutor's witness list. The prosecutor stated that her remaining endorsed witnesses would be cumulative, and defense counsel agreed to waive them. Id., at 75.

Accordingly, this is not a case where defense counsel failed to investigate the potential of presenting an alibi defense. Defense counsel filed a notice of alibi, listing four of the witnesses Petitioner claims should have been called. The notice of alibi listed the bar, Club.com, as the location Petitioner claimed to be when the crime occurred. But defense counsel represented to the court that the witnesses were not cooperative, and Petitioner stated on the record that he agreed with the decision not to call them.

The existing record does not support Petitioner's claim. If anything, the record indicates that Petitioner's purported alibi witnesses were not willing to cooperate with defense counsel. Even Petitioner hints at this fact in his affidavit where he acknowledges that several of the witnesses had some connection with Taylor and were not willing to cooperate with defense. Furthermore, Petitioner stated on the record at the close of the prosecutor's case that he agreed not to call any witnesses. While Petitioner's on-the-record consent may not insulate defense counsel's decision from review, it does belie Petitioner's allegation that he was vehement about presenting an alibi defense. Petitioner has not and cannot overcome the presumption that defense counsel's decision to forego an alibi defense in favor of the defense that was presented was not the product of a legitimate strategic decision.

The same holds true for counsel's failure to call Petitioner as witness in his own defense. When a tactical decision is made by an attorney that a defendant should not

22

testify, the defendant's assent is presumed. *Gonzales v. Elo*, 233 F. 3d 348, 357 (6th Cir. 2000).  A trial court has no duty to inquire sua sponte whether a defendant knowingly, voluntarily, or intelligently waives his right to testify. *United States v. Webber*, 208 F. 3d 545, 551-52 (6th Cir. 2000).  Waiver of the right to testify may be inferred from a defendant's conduct.  Here, Petitioner did not alert the trial court at the time of trial that he wanted to testify.  Thus, his failure to do so constitutes a waiver of this right. *Id.*  Because the record is void of any indication by Petitioner that he disagreed with counsel's advice that he should not testify, Petitioner has not overcome the presumption that he willingly agreed to counsel's advice not to testify or that his counsel rendered ineffective assistance of counsel. *Gonzales*, 233 F. 3d at 357.

Given the limitations of review created by Petitioner's failure to support his claim factually in the state courts, the adjudication of this claim by the Michigan Court of Appeals did not involve an unreasonable application of clearly established Supreme Court law.

## F.  Reasonable Doubt Jury Instruction

Petitioner next claims that the jury instructions diminished the beyond-a-reasonable-doubt standard.  He also claims that his trial counsel was ineffective for failing to object to the jury instruction on these grounds.  Respondent asserts that the claim is procedurally defaulted because the instruction was not objected to at trial.

While the procedural default doctrine precludes habeas relief on a defaulted claim, it is not jurisdictional. See *Trest v. Cain*, 522 U.S. 87, 89 (1997). Thus, while a procedural default issue should ordinarily be resolved first, "judicial economy sometimes dictates reaching the merits of [a claim or claims] if the merits are easily resolvable against a

petitioner while the procedural bar issues are complicated." *Barrett v. Acevedo*, 169 F.3d 1155, 1162 (8th Cir. 1999) (internal citations omitted). Here because review of Petitioner's jury instruction claim is intertwined with his ineffective assistance of trial counsel claim, the Court will proceed to the merits of the claim.

The Supreme Court has held that "[t]he Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970). However, "not every ambiguity, inconsistency, or deficiency in a jury instruction rises to the level of a due process violation. The question is 'whether the ailing instruction . . . so infected the entire trial that the resulting conviction violates due process.'" *Middleton v. McNeil*, 541 U.S. 433, 437 (2004) (*quoting Estelle v. McGuire*, 502 U.S. 62, 72 (1991)). The Supreme Court has held "the defendant must show both that the instruction was ambiguous and that there was 'a reasonable likelihood' that the jury applied the instruction in a way that relieved the State of its burden of proving every element of the crime beyond a reasonable doubt." *Waddington v. Sarausad,* 129 S.Ct. 823, 831, 172 L. Ed. 2d 532 (2009) (*quoting Estelle*, 502 U.S. at 72).

"[S]o long as the court instructs the jury on the necessity that the defendant's guilt be proven beyond a reasonable doubt, the Constitution does not require that any particular form of words be used in advising the jury of the government's burden of proof. Rather, 'taken as a whole, the instructions [must] correctly conve[y] the concept of reasonable doubt to the jury.'" *Victor v. Nebraska*, 511 U.S. 1, 5 (1994) )(citations omitted) (alterations in original).

The trial court defined the prosecutor's burden of proof as follows:

24

Oh, I'm sorry. I forgot something. Sit back down again.

I forgot to tell you that the standard of proof, of course, is proof beyond a reasonable doubt. That is the standard.

So what you're asked to do is use reason and common sense. Reasonable doubt, a doubt for which you can assign a reason for having.

Now, a reasonable doubt is not a flimsy, or vain, or imaginary doubt. It's not a hunch, a feeling, a possibility of innocence, or a theory that may arise in your mind.

It is a fair, honest, and reasonable doubt.  The kind of a doubt that would make you hesitate before making an important decision.

If you have a doubt, you must have a reason for having that doubt. It's not a flimsy or imaginary doubt.

If you can say that you have an abiding conviction to a moral certainty that the People have met their proofs and you have no reasonable doubt, you bring back a verdict of guilty.

If you don't have a reasonable doubt - I'm sorry, if you have a reasonable doubt, bring back a verdict of not guilty.

If you have no reasonable doubt, then bring back a verdict of guilty.

Now again, the People do not have to prove this case to you beyond all doubt. They don't have to prove it to you beyond a shadow of a doubt, which I'm sure most of you have heard before.  It's reasonable doubt.

Now, what you're asked to do is to bring your everyday common sense, and your everyday experiences with you into the jury room. You don't leave it outside the door. You apply your everyday common sense and reasonableness when you're reviewing the evidence.

And what we're asking you to do is use your common sense, review the evidence, and draw conclusions.

And again, a reasonable doubt is not a flimsy, or vain, imaginary, or fictitious doubt. Or a hunch, or a feeling, or a possibility of innocence. It's a fair, honest and reasonable doubt. The kind of a doubt that  you should have a reason for having.  Tr. 4-7-05, at 30-32.

Petitioner identifies three flaws with this instruction.  First, he asserts that the trial

25

court failed to instruct the jury that a reasonable doubt can arise from a *lack* of evidence, whereas the jury was instructed to consider only their common sense and review of the evidence.  Next, Petitioner asserts that a reasonable doubt was erroneously limited to doubts to which the jury could *assign a reason*.  Finally, Petitioner asserts that the court erroneously equated the level of certainty to satisfy the standard with an *abiding conviction to a moral certainty.*

### 1. Lack of Evidence

Petitioner first contends that the trial court gave a defective reasonable doubt instruction because it instructed the jurors that "you apply your everyday common sense and reasonableness when you're reviewing the evidence.  And what we're asking you to do is use your common sense, review the evidence, and draw conclusions."  Petitioner complains that the jury was not specifically told that they could also consider the *lack* of evidence in drawing their conclusions.  The fact that the trial court did not instruct the jurors that a reasonable doubt could arise from a lack of evidence does not render the instruction infirm. *See United States v. Diaz*, 176 F.3d 52, 101-02 (2nd Cir. 1999);*United States v. Rogers*, 91 F.3d 53, 56-57 & n. 2 (8th Cir. 1996); *United States v. Baskin*, 280 U.S. App. D.C. 366, 886 F. 2d 383, 388 (D.C. Cir. 1989); *Ashe v. United States*, 288 F.2d 725, 730 (6th Cir. 1961). Indeed, "[T]hat a lack of evidence may cause one to have a reasonable doubt is self-evident." *Rogers*, 91 F. 3d at 57.

### 2. Assigning a Reason to Doubt

Next, the trial court defined a reasonable doubt as one to which a reason can be

26

assigned.  The Sixth Circuit has not ruled on this specific language.  But the Second Circuit, reviewing similar - but more problematic - language, has said that "instructing a jury that a reasonable doubt is 'a doubt for which some good reason can be given' fundamentally misstates the reasonable doubt standard." *Chalmers v. Mitchell*, 73 F.3d 1262, 1274 (2d Cir. 1996) (emphasis added). The Fifth Circuit, on the other hand, although having recorded its "reservations" about so-called "articulation" language that appears to require a "serious doubt for which [a juror] could give a good reason," *see, e.g., Humphrey v. Cain*, 120 F.3d 526, 529 (5th Cir. 1997) ("*Humphrey I*"); *reasoning adopted by Humphrey v. Cain*, 138 F.3d 552, 553 (5th Cir. 1998) (en banc) ("*Humphrey II*") (emphasis added), has nonetheless repeatedly observed that "the Supreme Court has never expressed disfavor with such language." *Muhleisen v. Ieyoub*, 168 F.3d 840, 844 (5th Cir. 1999).

Here, the trial court's instruction is distinct from the instructions criticized in the Second and Fifth Circuits in two ways: first, there is no normative qualifier, i.e., "good" or "serious," attached to the contemplated "reason"; second, inviting a juror to picture a "reason" for doubt that he or she might merely "have" is rather different from suggesting that there might be a "reason" that the juror can "give" during deliberations.  Indeed, the Fifth Circuit, in *Humphrey I*, focused its concern not on the concept of an abstract "reason," but on a juror potentially being called on to "give" a reason - and not just any reason, but a "good" or "serious"  one.  The court explained that "inarticulate and undecided jurors" might be "less likely to give defendants the benefit of their doubts" if they perceived the law as "requiring articulation of good reasons." *Humphrey I*, 120 F.3d at 531.  The court explained its fear that "a juror favoring guilt would have a powerful tool if he could demand that undecided jurors articulate good reasons for considering an acquittal." *Id.*

27

If anything, the instruction that a reasonable doubt is merely "[a] doubt which you can assign a reason for having" without qualifying what is meant by "reason" seems rather circular.  It does not suggest a requirement of any additional showings by the jurors.  The complained of language did not require the jurors to actually identify (either expressly or mentally)  the actual reason for their doubt, nor did it attempt to quantify such reason.  Rather, the explanation in effect told the jurors that a reasonable doubt is one based in reason.  Being capable of having a reason for one's doubt - without being called on to express or identify it - is merely the opposite of having a doubt that is "flimsy or imaginary" and is something very different from "a hunch, or a feeling."

This aspect of the instruction does not give rise to the fears expressed in *Humphrey I*, and it did not shift the burden of proof to the defense in contravention of Petitioner's Due Process rights.

### 3. __Moral Certainty__

Finally, Petitioner lastly asserts that the use of the term "moral certainty" in the reasonable doubt instruction impermissibly lowered the burden of proof.  In *Cage v. Louisiana*, 498 U.S. 39 (1990), the Supreme Court held that an instruction that defined reasonable doubt in terms of "grave uncertainty" and "actual substantial doubt," and required conviction based upon "moral certainty," could have been interpreted by a reasonable juror as allowing a finding of guilt based upon a degree of proof below that required by the Due Process Clause.  *Cage*, 498 U.S. at 41 (1990).  In reversing the conviction, the Supreme Court found that terms like "substantial" and "grave," in common parlance, "suggest a higher degree of doubt than is required for acquittal under the

28

reasonable doubt standard." *Id.* When combined with the reference to "moral certainty," a reasonable juror could have been confused by the instruction and interpreted it to overstate the required degree of uncertainty. *Id.*

In *Victor, supra,* the Supreme Court limited its holding in *Cage*, and reasoned that the mere use of the term "moral certainty" in a jury instruction defining reasonable doubt by itself did not violate due process.  The Court determined that the term "moral certainty," read in the context of the instruction in *Victor*, merely impressed upon the jury the need to reach a subjective state of near-certitude of guilt. The Court found no reasonable likelihood that the jury would have understood the phrase to be disassociated from the evidence in that case. *Victor*, 511 U.S. at 14-16.  The Court also found that use of the term "moral certainty" in the Nebraska jury instruction on reasonable doubt did not violate due process because the jurors were further instructed that they had to have an abiding conviction as to the defendant's guilt; the instruction equated doubt sufficient to preclude moral certainty with doubt that would cause a reasonable person to hesitate to act; and the jurors were told that they should be governed solely by the evidence introduced before them, without indulging in speculation, conjectures, or inferences not supported by the evidence. *Id.* at 21-22. The Court distinguished these jury instructions from the instruction found unconstitutional in *Cage*, noting that in *Cage* the instruction merely told the jury that they had to be morally certain of the defendant's guilt without any additional explanations that would give meaning to the phrase "moral certainty." *Id.*

The Sixth Circuit has held that the use of the term "moral certainty" does not automatically render a jury instruction on reasonable doubt fundamentally unfair.  In *Austin v. Bell*, 126 F.3d 843, 847 (6th Cir. 1997), the Sixth Circuit Court of Appeals ruled that a

29

reasonable doubt instruction which stated that moral certainty was required to convict the defendant on a criminal charge, did not impermissibly lower the burden of proof. The instruction in that case included an additional statement that reasonable doubt was engendered by "an inability to let the mind rest easily" after considering all of the proof in the case. *Id.* That language, the court believed, lent content to the phrase "moral certainty." *Id.* In context, the court concluded, the phrase did not create a reasonable likelihood that the jury impermissibly applied the jury instruction. *Id.*; *see also Cone v. Bell*, 243 F.3d 961, 971-72 (6th Cir. 2001), *reversed on other grounds by Bell v. Cone*, 535 U.S. 685 (2002).

The reasonable doubt instruction in this case correctly conveyed to the jurors the degree of certainty they must possess according to the Constitution before they could convict. Like the acceptable jury instruction in *Victor*, the trial court's reasonable doubt instruction referred to an "abiding conviction" as to the defendant's guilt and equated doubt sufficient to preclude moral certainty with doubt causing jury members to "hesitate before making an important decision." The trial court also instructed the jury that the prosecutor carried the burden of proof, that Petitioner was presumed innocent, and that the presumption of innocence "starts at the beginning of the trial [and] goes into the jury room while you are deliberating"; and that the petitioner was not required to come forward with any evidence. Tr. 4-7-05, at 8-9. Accordingly, the use of the term "moral certainty" in the jury instruction did not dilute the prosecutor's burden of proof.

None of Petitioner's challenges to the reasonable-doubt instruction have merit. The jury was adequately instructed on the prosecutor's burden of proof. Petitioner is therefore not entitled to habeas relief on this claim.

## G.  Prosecutor's Presentation of False Testimony

Petitioner's last claim asserts that the prosecutor knowingly presented false testimony when she allowed Jason Taylor to testified about receiving phone calls from Petitioner on the night of the shooting and for allowing him to testify that he was shot in the hip.  Petitioner alleges that phone records would prove that he did not call Taylor on the night of the shooting and medical records would show that Taylor was not shot in the hip.

"[D]eliberate deception of a court and jurors by the presentation of known false evidence is incompatible with rudimentary demands of justice." *Giglio v. United States*, 405 U.S. 150, 153 (1972) (internal quotation omitted).  "The same result obtains when the State, although not soliciting false evidence, allows it to go uncorrected when it appears." *Napue v. Illinois*, 360 U.S. 264, 269 (1959).  A conviction obtained by the knowing use of perjured testimony must be set aside "if 'the false testimony could . . . in any reasonable likelihood have affected the judgment of the jury . . .'" *Giglio*, 405 U.S. at 154 (*quoting Napue*, 360 U.S. at 271); *see also United States v. Agurs*, 427 U.S. 97, 103 (1976).  In order to prove this claim, a petitioner must show that (1) the statement was actually false; (2) the statement was material; and (3) the prosecution knew it was false.  *Coe v. Bell*, 161 F.3d 320, 343 (6th Cir. 1999).

Taylor testified that after he was shot in the neck, he slumped forward and felt a shot on the left side of his back.  Tr. 4-5-05, at 43.  The prosecutor had Taylor stand and indicate the locations of his wounds.  Among his other wounds, Taylor apparently pointed to his right hip.  Id., at 45.  Petitioner alleges that Taylor's medical records do not indicate anything about a gunshot wound to the hip.

"While a prosecutor may not knowingly use perjured testimony, a prosecutor is not

31

required to ensure that prosecution witnesses' testimony be free from all confusion, inconsistency, and uncertainty." *Jackson v. Lafler*, No. 06-CV-15676, 2009 U.S. Dist. LEXIS 39574, 2009 WL 1313316, *12 (E.D. Mich. May 11, 2009).  The fact that a witness contradicts herself or changes her story does not establish perjury. *See United States v. Wolny*, 133 F.3d 758, 763 (10th Cir. 1998); *United States v. Lebon*, 4 F.3d 1, 2 (1st Cir. 1993).  Here, there is no dispute that Taylor was shot multiple times while he was seated in the driver's seat of his car.  The fact that his description of his various wounds might have been vague or inconsistent does not demonstrate that the witness provided false testimony, that the prosecutor purposefully elicited false testimony, or that she misrepresented the facts.

Similarly, Petitioner has offered no information to indicate that Taylor's testimony regarding the various telephone conversations he had with Petitioner was untrue.  The prosecutor had a representative from the phone company listed as a witness and presumably prepared to testify that the calls were made, but she waived the presentation of this witness on the grounds that the testimony would be cumulative.  Petitioner has offered nothing to suggest that Taylor's testimony regarding the phone calls was false.  Accordingly, this claim does not provide a basis for granting habeas relief.

## VI.  <u>Certificate of Appealability</u>

A petitioner must receive a certificate of appealability ("COA") in order to appeal the denial of a habeas petition for relief from either a state or federal conviction. 28 U.S.C. §§ 2253(c)(1)(A), (B).  A court may issue a COA "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).  When a federal

district court rejects a habeas claim on the merits, the substantial showing threshold is met if the petitioner demonstrates that reasonable jurists would find the district court's assessment of the constitutional claim debatable or wrong. *See Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003)(citation omitted). In applying this standard, a district court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of the petitioner's claims. *Id.* at 336-37.

With respect to Claim 5, alleging ineffective assistance of counsel, the Court concludes that jurists of reason may find the assessment of the claim debatable. While the Court finds that the claim must fail because of Petitioner's failure to support it factually in the state courts, another jurist of reason may find that Petitioner's efforts in the state court were nevertheless diligent. If the affidavits appended to the petition were properly before the Court it would put the claim on a much stronger footing. Accordingly, the Court will grant a certificate of appealability with respect to this claim.

The Court concludes that jurists of reason would not find the Court's assessment of Petitioner's remaining claims debatable or wrong. The Court thus declines to issue Petitioner a certificate of appealability with respect to these claims.

### VII.  Conclusion

For the reasons stated above, the state courts' rejection of Petitioner's claims did not

result in a decision that was contrary to Supreme Court precedent, an unreasonable application of Supreme Court precedent, or an unreasonable determination of the facts. Accordingly, the petition for a writ of habeas corpus is **DENIED.**

# VI.  ORDER

Based upon the foregoing, IT IS ORDERED that the petition for a writ of habeas corpus is **DENIED WITH PREJUDICE.**

IT IS FURTHER ORDERED That a certificate of appealability is **GRANTED**  with respect to Petitioner's Claim 5, alleging ineffective assistance of counsel, but it is **DENIED** with respect to Petitioner's other claims.

IT IS FURTHER ORDERED that petitioner is granted leave to appeal *in forma pauperis.*


s/Gerald E. Rosen_____
Chief Judge, United States District Court

Dated:  January 11, 2011


I hereby certify that a copy of the foregoing document was served upon counsel of record on January 11, 2011, by electronic mail and upon Dax Hawkins, #532345, St. Louis Correctional Facility, 8585 N. Croswell Road, St. Louis, MI 48880 byordinary mail.

s/Ruth A. Gunther_____
Case Manager

34